**ELDER v. UNITED STATES.**

No. 13405.

United States Court of Appeals
Ninth Circuit.

Feb. 24, 1953.

Rehearing Denied March 25, 1953.

466

J. B. Tietz, Los Angeles, Cal., for appellant.

Walter S. Binns, U. S. Atty., Ray H. Kinnison, Manuel L. Real, Assts., Los Angeles, Cal., for appellee.

Before HEALY, BONE, and ORR, Circuit Judges.

HEALY, Circuit Judge.

Appellant, who claimed to be a conscientious objector, was convicted of refusing to submit to induction into the armed forces of the United States. He appeals on several grounds, the first of which is that he was denied his procedural rights in that the local selective service board failed to grant his request for a personal appearance after classification, as required by the regulations.[1]

Appellant was 21 years old and a high school graduate. In his questionnaire, filed in May of 1949, he did not sign the conscientious objector form (Series XIV). Later, however, he wrote a letter to the board claiming to be conscientiously opposed to war and asking for forms. The appropriate form (150) was mailed him and he filled it out and returned it. On August 29, 1950 he was classified I–A–O and was given notice thereof.[2] In response he wrote a letter on September 8, 1950, requesting "a personal appearance before the appeal board." An entry in the local board Minutes of date September 9 notes this letter

as "Appeal Received." Shortly afterwards the local board directed continuance of the I–A–O classification and mailed notice of its action. Another letter from appellant followed, requesting "a personal appearance before the appeal board * * *." This is noted in the Minutes by the following entry: "Appeal received (a duplicate of the appeal received 9–9–50)." The Minutes of January 9, 1951 disclose the entry of an order to forward the file to the appeal board, and it was forwarded three days later.

██ ██ In her testimony on cross examination in reference to the contents of the file the clerk of the local board said that appeals were taken by the registrant as shown in the Minute entries. Her testimony, plus the entries and the forwarding of the file, would seem to reflect the board's understanding that an appeal was what the registrant desired. The trial judge was of opinion that the board's interpretation was warranted by the wording of the requests, and that no misconduct on the board's part was disclosed. Appellant asked that the issue be submitted to the jury, but the court, on authority of Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59, ruled that the question was for determination by the judge. We think the ruling was correct. Nor are we able to say on this record that appellant asked and was refused a personal appearance before the local board in respect of his I–A–O classification.

It should be noted that at a later stage of the selective service proceeding, and after the appeal board had given appellant a I–A classification, the local board, on suggestion of its appeal agent, granted appellant a personal appearance for the purpose

1. Section 1624.1 of the Selective Service Regulations provides in part: "Every registrant, after his classification is determined by the local board * * *, shall have an oportunity to appear in person before the member or members of the local board designated for the purpose if he files a written request therefor within 10 days after the local board has mailed a Notice of Classification (SSS Form No. 110) to him."

Section 1624.2 outlines the course the registrant may follow at such hearing.

2. The notice of classification (Form No. 110) contains printed information reading in part as follows:

"Appeal from classification by local board must be made within 10 days after the mailing of this notice by filing a written notice of appeal with the local board.

"Within the same 10-day period you may file a written request for personal appearance before the local board."

of considering whether his case should be reopened. In this connection he was required to sign a waiver of rights of reopening. At the hearing he was given opportunity to present any new information he might have bearing on his conscientious objector claim. Upon consideration of such information as was given, and after a review of the file, the board decided against a reopening of the case, and appellant was notified of its decision. It is thus highly questionable whether appellant suffered any substantial prejudice, even assuming that his letters should have been construed as his counsel now claims they were intended. Compare Martin v. United States, 4 Cir., 190 F.2d 775; Knox v. United States, 9 Cir., 200 F.2d 398.

Preliminary to disposition of other points, the steps taken on the administrative appeal will now be outlined. The appeal board reviewed appellant's file and determined that he was not entitled to classification in either a class lower than IV–E or in class IV–E, and it thereupon forwarded the file to the Department of Justice for inquiry and hearing by the latter in conformity with the provisions of the Act, 50 U.S.C.A. Appendix, § 456(j). As is routine in such cases the Federal Bureau of Investigation conducted an inquiry and made its report to the Department and the departmental hearing officer, and a hearing was held by the latter of which appellant was notified and at which he was present. In his report the hearing officer recommended that the registrant be not given either a IV–E or a I–A–O classification, and he was then reclassified I–A by the appeal board by unanimous vote.

■ It is claimed that the court refused to admit evidence that the hearing officer made an incomplete and incorrect report of the hearing conducted, and that the refusal was error. This matter was not adequately presented below. The only intimation in the record of the existence of such evidence is a remark of counsel to the effect that he desired "to bring out from this witness [appellant], * * * that the report made of his interview with the hearing officer has some material inaccuracies. * * *." No questions along this line were put to the witness nor any offer of proof made in respect of the particulars of the alleged inaccuracies. Had this been done the trial judge would have been called upon to make a definite ruling, and for all we know it may be that he would have permitted the introduction of the evidence Assuming admissibility, we are not in a position to determine, any more than the trial court was, whether the evidence of inaccuracy, if any, was of such nature as to render its exclusion prejudicial.

■ Another point urged is that the failure of the local board to notify appellant's mother of his classification amounted to a denial of due process. The point appears to be predicated on § 1626.2(c) of the regulations which provides for an appeal by "any person who claims to be a dependent of the registrant, * * *"

In August of 1950 the mother wrote the local board as follows:

"Aug. 21st
"Sir,

I am Theron Roy Elder's mother. I had an operation on my back April 18th. I'm still in bed. I have not worked since last Sept. I don't know when I can work again—the doctor said 1-½ yrs. or 2. If Roy was home with me, he could take me to the White Memorial Clinic on Sun. to see the Dr. or have treatments.

I'm not with my husband. When we were evicted 4 years ago he said it was too much for him & step out of the picture. I do have a daughter—she don't drive the car. Roy could pick up the groceries with the car—also fix the car when it needs it. Would this situation be considered?

Respectfully, Mrs. Juanita Elder"

It is contended that the board should have interpreted this letter as a request for dependency deferment. In this connection the definition of the term "dependents" becomes important. Section 1622.15 of the regulations then applicable provided in pertinent part: "(a) In Class III–A shall be placed * * * (2) any registrant whose induction into the armed forces would result in hardship and privation to a person dependent upon him for support.".

We are of opinion that the point urged is purely technical and is without substance. The letter advanced no claim of dependency in the sense of the regulations.

■ Finally, a proposition is advanced which was not presented or so much as hinted at in the course of the trial, namely, that the FBI report to the Department of Justice should have been placed in the registrant's file for his inspection; and it is contended that the omission vitiated the proceeding. The record before us includes the file, and an examination of the latter discloses that it does not contain the report. While normally the court will not consider points not presented below, we think that in the posture of the present case the question now raised should in fairness be noticed, more particularly as the Second Circuit has recently held that the failure to place the FBI report in the file constitutes a violation of § 6(j) of the Act,[3] and renders the proceeding a nullity. United States v. Nugent, 2 Cir., 200 F.2d 46.

■ We are not able to agree that the statute either requires or contemplates the inclusion of the investigative report in the file.[4] This does not mean that the registrant may not timely obtain information as to the tenor of the report. The instructions of the Justice Department provide that upon request of the registrant in advance of the hearing the hearing officer shall advise him "as to the general nature and character of any evidence in his possession which is unfavorable to and tends to defeat, the claim of registrant, such request being granted to enable the registrant more fully

to prepare to answer and refute at the hearing such unfavorable evidence." In the case before us it does not appear whether the registrant requested or whether or not he obtained such information, and we are obliged to assume that there was no disregard of the departmental instructions in this respect. But in the Nugent case, supra, the court appears to have thought that divulgence of the nature of the evidence contained in the report would not be enough. It said that "that information would not have disclosed the identity of the witnesses who gave such 'evidence,' and thus would not have put defendant in position to interrogate or impeach those witnesses."

In our opinion the disclosure thought in the Nugent case to be required by the terms of the Act would operate, not to further, but to defeat the objective of Congress. Its apparent purpose was to require a check of the genuineness and good faith of the registrant's claim through inquiry of persons acquainted with him, and thus to ascertain whether injustice might not have been done him by the refusal of the selective service board to recognize his alleged conscientious scruples. Only in those instances where the registrant's objections have not been sustained by the board are referrals to be made to the Department. The regulations on the subject go even further. Section 1626.25(b), 32 CFR 1949 Ed., provides that: "No registrant's file shall be forwarded to the United States Attorney by any appeal board * * *, unless in the 'Minutes of Actions by Local Board and Appeal Board' on the Classification Ques-

3. The section, 50 U.S.C.A.Appendex, § 456(j), deals with conscientious objectors. The portion material here reads as follows: "Any person claiming exemption from combatant training and service because of such conscientious objections shall, if such claim is not sustained by the local board, be entitled to an appeal to the appropriate appeal board. Upon the filing of such appeal the appeal board shall refer any such claim to the Department of Justice for inquiry and hearing. The Department of Justice, after appropriate inquiry, shall hold a hearing with respect to the character and good faith of the objections of the person concerned, and such person shall be notified

of the time and place of such hearing." Continuing, the section provides, in summary, that the Department shall, after such hearing, recommend to the appeal board the classification in which it believes the registrant should be placed.

4. Here, as we presume is the customary practice, the hearing officer's report covered in detail, not only the matters developed at the hearing, but the substance of the FBI report, omitting the names of the registrant's acquaintances and others whom the agents had interviewed. The hearing officer's report was, of course, placed in the file for the information of the appeal board, and was available for appellant's inspection.

tionnaire (SSS Form No. 100)) the record shows and the letter of transmittal states that the appeal board reviewed the file and determined that the registrant should not be classified in either Class I–A–O or Class IV–E * * *," these being the conscientious objector classifications. If the agency inquiry following such referral is to be productive of worthwhile results it seems essential that frankness on the part of persons interviewed be encouraged by assurance that their identity will not be divulged; and in the absence of clear intimation in the statute to the contrary the court will not assume that Congress intended these investigative reports to be made public.[5]

Affirmed.

5. Cf. United States ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417, in which the validity of Department of Justice Order No. 3229 was upheld. This order, adopted in 1946 and supplemented June 6, 1947, makes confidential official documents and information in the offices of the Department of Justice, including the Federal Bureau of Investigation, and it provides among other things that "Under no circumstances should the name of any confidential informant be divulged." The court can not assume that Congress was unaware of this departmental policy. In an amendment to § 6(j) of the Act made June 19, 1951 no change was effected in the provisions thereof quoted in note 3, supra.