**UNITED STATES of America,**
**Appellee,**

v.

**David MIZRAHI, Appellant.**

**No. 23405.**

United States Court of Appeals
Ninth Circuit.

Sept. 18, 1969.

James M. Carter, Circuit Judge, dissented.

J. B. Tietz (argued), Los Angeles, Cal., for appellant.

Theodore E. Orliss (argued), Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Chief, Crim. Div., Los Angeles, Cal., for appellee.

Before ELY, CARTER, and HUF-STEDLER, Circuit Judges.

ELY, Circuit Judge:

Mizrahi seeks reversal of his conviction for having refused to submit to in-

duction under the Universal Military Training and Service Act, 50 U.S.C. App. § 462.

On March 12, 1965, Mizrahi registered with Local Board No. 101 in Los Angeles, California, and, on May 4, 1966, he received a I-A classification. Shortly thereafter, on May 31, 1966, Mizrahi obtained a Special Form for Conscientious Objectors (SSS Form No. 150) which he completed and personally returned the following day. In that form, the appellant initially claimed that his beliefs were such that he should be exempt from both combatant and noncombatant service (class I-O); however, upon appearing before his local board, Mizrahi indicated that he would accept a classification which would exempt him only from combatant training and service (class I-A-O).[1] When he amended his SSS Form No. 150 to reflect this change of heart, the board, on June 1, 1966, classified him I-A-O.

Unhappy with the classification which he had received, Mizrahi subsequently sought review of his status. The local board authorized his appeal and forwarded his file to the appropriate Selective Service appeal board. On April 20, 1967, the appeal board determined that the I-A-O classification should not be altered. After refusing to comply with the induction notice which followed the appeal board's determination, Mizrahi was indicted and convicted. He rests his appeal upon the principal contention that the Selective Service authorities neglected to follow the regulations which then governed the processing of appealing registrants who claimed to be conscientious objectors.

Prior to July 1, 1967, it was prescribed that there should be a Justice Department hearing whenever a local board denied a registrant's conscientious objector claim and the appeal board, upon preliminary examination of his file, agreed with the local board's disposition. *See*

United States v. Haughton, 413 F.2d 736 (9th Cir. June 19, 1969). The regulation provided in part:

"(a) If an appeal involves the question whether or not a registrant is entitled to be sustained in his claim that he is a conscientious objector, the appeal board shall tentatively determine whether or not the registrant is eligible for classification in a class lower than Class I-O. If the appeal board finds that the registrant is eligible for classification in Class I-O or in a lower class, it shall place him in the appropriate class.

"(b) If the appeal board tentatively determines that the registrant is not entitled to classification in either a class lower than Class I-O or in Class I-O, it shall transmit the entire file to the United States Attorney for the Federal Judicial district in which the appeal board has jurisdiction for the purpose of securing an advisory recommendation from the Department of Justice."

32 CFR § 1626.25 (1967). *See also* Selective Service Act of 1948, § 6(j), 62 Stat. 604, 613, 50 U.S.C. § 456(j), as amended, 65 Stat. 75, 86, 50 U.S.C. App. (Supp. V) § 456(j) (1951).

The procedure for processing registrants who were formerly entitled to a Department of Justice hearing under the now repealed 32 CFR § 1626.25 (1967) was as follows: (1) The Department would refer the appealing registrant's name to the FBI for an investigation of his background and reputation; (2) The FBI would report its findings by a written resumé to the Justice Department; and (3) The Justice Department would then designate a "Hearing Officer" to conduct the hearing. At such hearings, registrants were entitled to be presented by an "advisor" and, if they desired, could present witnesses to testify in their behalf. Thereafter, upon request, registrants were entitled to know

---

1. In the court below, Mizrahi insisted, in effect, that this decision was hastily made and that his then temporary agreement to the higher classification was induced by "coercion" of his local board and his then misunderstanding of his rights.

the "general nature and character" of any "unfavorable" evidence developed by the Department's investigation so that they might have an opportunity to rebut any unfavorable recommendation made to their appeal boards. *See* United States v. Nugent, 346 U.S. 1, 2–5, 73 S.Ct. 991, 97 L.Ed. 1417 (1953).

■ Due to the appeal board's action of April 20, 1967, there was no FBI investigation of Mizrahi, and he was not accorded the Department of Justice hearing. The Government urges that the hearing was not required since the question of "whether or not [Mizrahi] is entitled to be sustained in his claim that he is a conscientious objector" was not before his appeal board. *See* 32 CFR § 1626.25 (1967). This contention is based upon the fact that Mizrahi, who was already in class I–A–O, the classification which he had earlier agreed to accept, did not, in taking his appeal, specifically request full exemption as a conscientious objector. However, it is obvious that when Mizrahi took his appeal, he was not satisfied with the partially exempt status attending his I–A–O classification. In the circumstances, it would be incongruous, if not almost ridiculous, to assume that he took an appeal in order to obtain the next highest classification (I–A), a classification which would allow no exemption whatsoever for his claimed beliefs. Moreover, there was, at that time, no lower classification, other than I–O, to which he might have been entitled under the "facts" which appear in his Selective Service file. There is no reasonable alternative to our holding that Mizrahi, by appealing, fixed upon the appeal board the obligation to consider whether he should be classified I–O.

■ When Mizrahi's file was forwarded to the appeal board, that body was required to make a *de novo* classification decision and place Mizrahi in the lowest classification to which he would be eligible pursuant to the appeal board's *de novo* evaluation. *See* 32 CFR § 1626.-26 (1967); 32 CFR § 1623.2 (1967). Since class I–O was the only lower clas-

sification for which Mizrahi, according to his file, might be eligible, the appeal board was obliged to consider the appeal as raising the question "of whether or not [Mizrahi] is entitled to be sustained in his claim that he is a conscientious objector."

■ The Government also argues that under United States v. Haughton, 413 F.2d 736 (9th Cir. 1969), a Justice Department hearing was not required. In *Haughton* our court held that a registrant whose Selective Service file had been forwarded to his appeal board, but who had not been processed by the Department of Justice prior to July 1, 1967, was not entitled, as of right, to a Department hearing. Under this holding, there are two situations wherein the denial of Justice hearings to registrants who might have been entitled to such hearings under the former procedure is proper: (1) When the appealing registrant's file reached the appeal board after July 1, 1967; (2) When the appealing registrant's file was forwarded to the appeal board before the "cut-off" date of July 1, 1967, but his claim had not been acted upon by the appeal board because it was awaiting a Justice Department recommendation and the Justice Department had not then, on July 1, 1967, had an opportunity to process the claim.

■ Mizrahi falls in neither category. He filed an untimely notice of appeal on December 22, 1966, but on February 13, 1967, his local board authorized the appeal. His file was sent to the appeal board but on April 20, 1967, over two months before the "cut-off" date, that board decided to by-pass a Department of Justice recommendation and make its determination to retain Mizrahi in class I–A–O. Hence, as of the "cut-off" date, July 1, 1967, Mizrahi's appeal had already been decided adversely to him, and he had already been denied his right to the application of procedures then required and outlined in 32 CFR § 1626.25 (1967). Indeed, as of the "cut-off" date, Mizrahi had already been ordered to report for induction on July 11, 1967.

*Haughton* cannot be so far extended as to justify the appeal board's failure to follow the then required procedure.

■■ Considering the nature of the Department of Justice hearing and the FBI investigation to which Mizrahi was entitled, it is obvious that Mizrahi might not now stand convicted of a felony had there been faithful compliance with the pertinent regulations. It follows that the omission was prejudicial. Oshatz v. United States, 404 F.2d 9 (9th Cir. 1968); Briggs v. United States, 397 F.2d 370 (9th Cir. 1968). *Cf.* Welsh v. United States, 404 F.2d 1078 (9th Cir. 1968). Nevertheless, it is suggested that reversal would be an "idle" act since the omitted procedure, under new regulations, will not be applied to Mizrahi when he next undergoes the Selective Service process. This suggested approach is specious. Those rights of Mizrahi with which we are concerned are his rights as they existed when his appeal board reviewed his file. The possible course of future events is irrelevant.[2]

■ It is regrettable that the appeal board's fatal disregard of the controlling regulation was not specifically directed to the attention of the District Court. That Mizrahi's only persuasive contention should be advanced in our court for the first time is unfair to the District Court and constitutes an imposition upon us. Nevertheless, defense counsel moved for a judgment of acquittal and, under established precedent, we must hold that we are obliged to resolve the critical issue. *See* Howze v. United States, 409 F.2d 27 (9th Cir. 1969) and Oshatz v. United States, *supra.*

Reversed.

JAMES M. CARTER, Circuit Judge (dissenting):

Counsel for appellant, who has specialized in Selective Service cases for the past 20 years, and who represented appellant both in the court below and here, raised for the first time on appeal at oral argument, the fact that the Department of Justice hearing and recommendation provided for in 32 CFR § 1626.25 had not been conducted in this case. He asks us to consider the matter under Rule 52(b), Rules of Crim.Procedure, the plain error rule.

I.

On appellant's appearance before his local board he stated he would accept I–A–O classification which would exempt him only from combatant training and service. The board thus classified him I–A–O. In the court below he insisted, as stated in footnote 1 of the majority, that his decision was hastily made and was induced by the coercion of his local board and misunderstanding of his rights. The trial court in the non-jury trial by its finding of "guilty," found against the appellant on these contentions. When such issues are tried below, the jury's verdict or the finding of the trial court sitting without a jury, disbelieving the testimony of the defendant, disposes of these contentions. United States v. Cralle, 415 F.2d 1065 (9 Cir. 8/14/69).

2. We note, however, that acceptance of the Government's suggestion would require the assumption that Mizrahi could not now mount a more persuasive claim than that which he presented to his appeal board on April 20, 1967. We can make no such assumption. At the time of the appeal board's hasty, and premature determination, the ignored Department of Justice hearing would have been attended by a searching FBI investigation and the opportunity for both Mizrahi and his witnesses to testify before a hearing officer with specialized expertise in the evaluation of claimed conscientious objector beliefs. *See* United States v. Nugent, *supra.* We cannot assume that Mizrahi, anticipating adherence to the then required procedure, had advanced the full force of his claim to the appeal board. He may well have relied upon his ability to achieve conviction of his sincerity in subsequent interviews or in the Justice hearing which he was then entitled to expect.

## II.

In Marshall v. United States (C.A. 9, April 9, 1969), 409 F.2d 925, this Court repeated its longstanding standards under Rule 52(b):

"We generally believe, however, that we should invoke Rule 52(b) in the very exceptional situation only, situations wherein it appears to be necessary in order to prevent miscarriage of justice or to preserve the integrity and reputation of the judicial process. See Hansberry v. United States, supra; Smith v. United States, 173 F.2d 181, 184 (9th Cir. 1949)."

This Court has considered the plain error rule in Selective Service cases and upheld the convictions. Elder v. United States (9 Cir. 1953), 202 F.2d 465, 467. In Yeater v. United States (9 Cir. 1968), 397 F.2d 975, 976, the court rested its affirmance of the conviction "upon the well-established rule of appellate review that defenses not raised in the district court will not be considered on appellate review. A prosecution for violation of the Universal Military Training and Service Act is no different from other criminal prosecutions in this respect."

Shoemaker v. United States (9 Cir. May 22, 1969), 413 F.2d 274, closely parallels our case. Shoemaker had asked for and received a I–O classification. He indicated an intention to later qualify for a IV–D but never claimed it and *did not raise this question at the trial*. Relying upon *Yeater*, supra, the circuit would not find plain error where the question was not raised below.

## III.

32 CFR § 1626.25 in its opening phrase clearly shows that it is *only when the conscientious objection claim is in issue that the section applies*. The section starts out:

"(a) If *an appeal involves the question whether or not a registrant is entitled to be sustained in his claim that he is a conscientious objector*, the appeal board shall tentatively determine whether or not the registrant is eligible for classification in a class lower than Class I–O or in Class I–O." [Emphasis added]

Then follows (b) concerning referral for the advisory recommendation from the Department of Justice.

Thus, if the appeal did not involve the question of whether the registrant was entitled to be sustained in his claim as a conscientious objector, the hearing procedure was not required. 32 CFR § 1626.25 did not apply.

In United States v. Nugent (1953), 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417, the Supreme Court reviewed the procedure for the referral to the Department of Justice and the hearing and recommendation. The Court stated, "Congress was under no compulsion to supply this auxiliary service—to provide for a more exhausting processing of the conscientious objector's appeals. *Registrants who claim exemption for some reason other than conscientious objection, and whose claims are denied are entitled to no 'hearing' before the Department.*" Id. p. 8, 73 S.Ct. p. 996. [Emphasis added]. Conversely in Bates v. United States (1955), 348 U.S. 966, 75 S.Ct. 529, 99 L.Ed. 753, where the registrant's claim of exemption as a conscientious objector had been denied, he was entitled to have his file referred for the Department of Justice hearing and recommendation.

Bradshaw v. United States (10 Cir. 1957), 242 F.2d 180 is squarely in point. Bradshaw appealed, asserting a IV–D classification. The appeal board determined that he was not entitled to a I–O or a I–A–O classification and forwarded his file to the Department of Justice. The file was returned without recommendation on the ground that the question involved was not whether the registrant should be sustained in his claim that he was a conscientious objector. The appeal board ultimately restored Bradshaw's classification to I–O. The court stated it was not called upon to determine whether the referral of his file to the Department of Justice was required or prohibited or whether the

Department of Justice had properly refused jurisdiction.

"The referral would in any case be limited to determination of Bradshaw's sincerity as a conscientious objector. All matters submitted by Bradshaw to the Justice Department were submitted for the purpose of receiving a favorable report from the Department. No report was made, jurisdiction was denied, but still Bradshaw was found to be sincere. A favorable report from the Department of Justice, including all the supporting data, could not have availed appellant more upon the question of his sincerity, and the report could not search or have any bearing upon his claimed status as a minister." Pages 188–189.

In our case there was nothing to hold a hearing about. The files show that appellant abandoned his I–O claim, asked for a I–A–O claim and received it. His character and his good faith in his conscientious objector beliefs were not in issue. The appeal notice and the file at that time contained nothing showing which classification appellant was appealing for. In the absence of new information and on the file before it here, I–A–O or I–A were the only classifications available to the appeal board, 32 CFR § 1626.12, 1626.26, 1623.2. The appeal board interpreted its regulations to mean that no hearing or reconsideration by the Department of Justice was required and did not refer the file under 32 CFR § 1626.25 and classified appellant I–A–O.

The purpose of the referral under 32 CFR § 1626.25 for an advisory recommendation from the Justice Department was to secure consideration of the bona fides of the claim of conscientious objection. United States v. Nugent, supra. Customarily, after these hearings were had, the hearing officer would make recommendations to the Department of Justice and the Department of Justice as a last step would make a recommendation as to the bona fides of the conscientious objector claim.

The record was clear in showing appellant was a I–A–O claimant, and certainly a basis-in-fact exists for the appeal board to have so classified him. He had abandoned his I–O claim in favor of a I–A–O claim. He had not disputed the report of his personal appearance. 32 CFR § 1624.2(b). His appeal notice did not contain nor was it supported by any other information that he was *reclaiming* his I–O. 32 CFR § 1626.11, 1626.12. He had not filed a new SSS 150 nor informed his local board of any changes in his beliefs, 32 CFR § 1625.1 (b). His SSS 150 was vague and uninformative (Ex. 1, pages 17–20).

This court has held that it is unnecessary to hold a hearing which would not produce any new evidence. Clark v. United States (9 Cir. 1956), 236 F.2d 13, 21. Clark, a I–A appealing for a I–O, did not get a hearing. He had previously appealed a I–A for a I–O and had a conscientious objection hearing. His conviction was sustained. This court said that "A registrant is not entitled to repetitious determination of identical issues." A hearing to consider the *bona fides* and character already conceded to appellant would have been a totally useless exercise without any possible benefit to appellant.

Even if the hearing was required, its denial is not plain error. Appellant asked for and got the I–A–O classification. No record in the trial court exists to show what the hearing would have shown. Appellant's conscientious objector claim is perhaps the slimmest which could have be allowed. It appears that by the time he refused induction appellant was no longer a conscientious objector. The lack of a trial record requires us to assume and speculate about whether appellant was harmed. Since he was no longer a conscientious objector when he received his notice of induction, we cannot see where he was harmed.

IV.

Reversal of this case would be an idle act. The Presidential Order amended 32 CFR § 1626.25 on May 3, 1967 to elimi-

nate hearings in certain cases, including the case where the appeal board was willing to classify a registrant I–A–O. 32 CFR §§ 6961, 6962 [May 6, 1967]. If the case is sent back for further processing the omitted hearing and procedures cannot be afforded the appellant, since the procedures are no longer in effect. Certainly he should not be exempted from service under the Selective Service laws because he did not get a Department of Justice hearing and recommendation at an earlier date, when it cannot be afforded him now.

The judgment should be affirmed.